# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1204 | **DATE** | 3/22/2001 |
| **CASE TITLE** | CENTRAL STATES vs. HUNT TRUCK LINES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Central States motion for summary judgment is granted as to unpaid withdrawal liability in the amount of $303,592.75 with interest at the prime rate per annum and an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% and attorneys fees and costs [8-1]. Central States is directed to file a motion for total judgment for a sum certain within ten days of the date of this order. Hunt's motion for summary judgment is denied [12-1].
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | 3/26/01 date docketed | |
| | Notified counsel by telephone. | | | 36 |
| ✓ | Docketing to mail notices. | | C.S. docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 3/23/01 date mailed notice | |
| TBK | courtroom deputy's initials | | C.S. mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 2 0 2001

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND,
and HOWARD McDOUGALL., trustee,

Plaintiffs,

v.

HUNT TRUCK LINES, INC., an Iowa
corporation,

Defendant.

No. 00 C 1204
Judge Ronald A. Guzman

## MEMORANDUM OPINION AND ORDER

Pending are the parties cross motions for summary judgment pursuant to Fed.R.Civ. Proc. 56. For the reasons set forth below Plaintiff Central States, Southeast and Southwest Areas Pension Fund and its Trustee motion for summary judgment is granted (#8-1) and Defendant Hunt Truck Lines, Inc.'s cross motion denied.(#31-1).[1]

## BACKGROUND FACTS

This case presents the third federal district court complaint filed by Central States,

---

[1] Pursuant to Hunt's motion for oral argument the parties appeared before this Court to orally argue the merits of their cross motions.

1

Southeast and Southwest Areas Pension Fund ("Central States") to collect secondary withdrawal liability incurred by Hunt as a result of Wintz Parcel Drivers, Inc. ("Wintz") filing of Chapter 7 bankruptcy. In 1994 Hunt sold its assets to Wintz and stopped making contributions to the fund. Ordinarily this would require Hunt to pay a withdrawal fee. However, since the sale to Wintz satisfied the statutory requirements of 29 U.S.C. § 1384(a)(1)(C), Hunt avoided payments as long as Wintz made the required contributions. In other words, Hunt became secondarily liable–if Wintz withdrew and failed to pay a withdrawal fee, within five years of Hunt's sale of assets.

On June 3, 1996 Hunt received a notice and demand from Central States requesting $303,372.75 in withdrawal liability. The fund claimed that Hunt's liability was triggered because Wintz had "effected a complete withdrawal." Hunt refused to pay. On September 6, 1996, Central States filed a lawsuit against Hunt demanding **interim** withdrawal liability payments. The case was assigned to the Honorable John A. Nordberg. Central States argued that the Multiemployer Pension Plan Amendments Act (MPPAA) required Hunt to make interim payments pending the outcome of the arbitration. Hunt, on the other hand, asserted that Central States was premature in demanding payment before Hunt's secondary liability for the withdrawal payments was triggered, i.e., before Hunt's successor, Wintz, affected a withdrawal. On January 12, 1999, Judge Nordberg granted Hunt's Motion for Summary Judgment finding that Central States sent the May 31, 1996 Notice and Demand to Hunt prematurely. The Court held that Central States could not recover interim withdrawal liability payments under the May 31, 1996, Notice and Demand because Central States failed to comply with the statutory prerequisites of the MPPAA in that it's notice and demand were premature.

2

At the same time, on December 20, 1996, Hunt commenced arbitration proceedings to contest the underlying fee assessment. The arbitration was held before Arbitrator Ira F. Jaffe, Esq. On June 23, 1998, Arbitrator Jaffe also concluded that Hunt had been billed prematurely and issued an interim award containing the affirmative order directing Central States to issue a revised demand and directed the Parties to "begin anew the demand, request for review and arbitration processes." On July 1, 1998, pursuant to the Interim Award, Central States issued a revised Notice and Demand for Withdrawal Liability against Hunt setting forth a principal due in the same amount as in the original Demand for the same complete withdrawal by Hunt from Central States. On October 14, 1998, the Interim Award was converted to a Final Award upon the Stipulation by Central States and by Hunt that Wintz, the purchaser of Hunt's assets, effected a complete withdrawal from Central States on July 27, 1996. The final award by the arbitrator, however, strangely did not specifically require Hunt to actually make any withdrawal liability payments to Central States.

Apparently overlooking this rather significant anomaly in the arbitration award, on October 15, 1998, Central States filed its second action under ERISA Section 4221(b)(2), 29 U.S.C. §1401(b)(2), seeking enforcement of the arbitration award based on the July 1, 1998, revised Demand and for collection of withdrawal liability under the July 1, 1998 revised Demand. This complaint was assigned to the Honorable Milton Shadur. The complaint sought to affirm and enforce Arbitrator's Jaffe's Final Award in this matter, and enter judgment against Hunt in accordance therewith and in favor of the Pension Fund, to grant the Pension Fund its costs and attorneys' fees in this action; and to grant the Pension Fund such other and further relief as this Court deems appropriate.

On February 24, 1999, Central States filed its Motion for Summary Judgment requesting the Court (Judge Shadur) to enforce the arbitration award and grant Central States its withdrawal liability assessed under the July 1, 1998, revised Demand. In its memorandum in support of its Motion for Summary Judgment, Central States argued that Arbitrator Jaffe properly directed Central States to issue a revised Demand to Hunt instead of voiding the assessment and starting anew.

On April 8, 1999, Judge Shadur entered judgment enforcing the arbitration award. Judge Shadur held that "Arbitrator Jaffe acted fully within his arbitral authority when, instead of voiding the assessment completely, he directed the Fund to issue a (July 1, 1998) revised demand and payment schedule to Hunt." In discussing the basis for his decision Judge Shadur noted in footnote 6 the following "Judge Nordberg's January 1999 opinion held that Hunt was not required to pay interim withdrawal liability payments while the arbitration was pending because the Fund has issued its notice and demand too soon. That somewhat novel decision not to hold hunt to ERISA's statutorily prescribed "pay now, dispute later" procedure need not impact this review of the Award. That opinion addressed only interim withdrawal liability and did not review Arbitrator Jaffe's decision dealing with Hunt's ultimate withdrawal liability." On April 26, 1999, apparently now cognizant of the fact that the arbitrator's award failed to provide for payment to it of money, Central States filed a Motion To Amend Judgment before Judge Shadur seeking an amendment of his judgment to provide for a monetary judgment in favor of Central States in the principal amount of the withdrawal liability. In its Motion to Amend Judgment, Central States stated: "[t]he Court should amend the Judgment to provide for Judgment in favor

4

of the Pension Fund in the principal amount of the withdrawal liability owed by Hunt pursuant to the revised demand..." In a Minute Order dated May 21, 1999, Judge Shadur denied Central States Motion to Amend Judgment. In a hearing on this matter on May 21, 1999, Judge Shadur said that Central States' request for modification was not appropriately before him in a Motion to Amend Judgment because the sole subject of the litigation was the enforcement of the arbitration award. Judge Shadur noted that there was no modification sought by either side which is, of course, what the ERISA statute would have permitted. Judge Shadur further noted in open court "my understanding has always been that when you get an arbitration award and the party says "Enforce it, the power of the Court is limited to saying, Yes, the arbitrator was right or no, the arbitrator was wrong." (TR. P. 6, Lines 19-22).

On May 6, 1999, Hunt appealed Judge Shadur's judgment enforcing the arbitration award. On June 30, 1999, Central States moved to consolidate its appeal of Judge Nordberg's decision to the Seventh Circuit with its appeal of Judge Shadur's judgment and denial of Central States' Motion to Amend Judgment. On July 12, 1999, the United States Court of Appeals for the Seventh Circuit issued an Order consolidating the Central States' appeals from Judge Nordberg's summary judgment decision of January 12, 1999 and from Judge Shadur's denial of Central States' Motion to Amend Judgment of May 21, 1999.

On February 28, 2000, the United States Court of Appeals for the Seventh Circuit affirmed Judge Norberg's decision as well as Judge Shadur's rulings. In so doing it found, among other things, that the arbitrator's opinion assumed that Central States would eventually collect the withdrawal liability in the amount it originally assessed. Admittedly, however, it was not clear to the court how the arbitrator envisioned that this would happen since his award did

not specifically include the payment of any money. The Seventh Circuit's opinion goes on to point out that "Central states could have returned to the arbitrator to ask for a clarification of the demand before it went to court. It also could have raised its contention that the award necessarily included a money judgment in its pleadings before Judge Shadur. Instead, it went to court the day after the arbitrator's decision came down and simply asked that the award be affirmed." Thus, the court was fully aware of both Central States' and the arbitrator's failings in the prior proceedings. Nevertheless, the last paragraph of the Seventh Circuit's opinion states as follows:

> Finally, we wish to make absolutely clear that, while Central States cannot recover on this appeal, our decision does not preclude future recovery. In fact, it appears certain that Central States will (and should) receive the full withdrawal fee to which it is entitled. As per arbitrator Jaffe's award, the fund has issued Hunt a renewed demand. Central States appears to be under the impression that either Judge Nordberg's or Judge Shadur's opinions preclude it from collecting on this second demand. This is not the case. Since both judge's rulings focused solely on the fund's prior, premature demand. (Indeed, it should already be complying.) If Hunt fails to pay on this demand, Central States need merely file suit under the MPPAA's enforcement scheme to ensure that it receives interim payments. This leave only one question unsolved: Why didn't Central States save everyone a big headache and pursue this course of action a long, time ago. Both judgments are AFFIRMED.
> *Central States v. Hunt Truck Lines*, 204 F.3d 736, 743 (7th Cir. 2000)

On February 29, 2000, Central States filed its third action against Hunt for collection of withdrawal liability for a complete withdrawal by Hunt. Hunt contends that this is the second case against it under the July 1, 1998 revised Demand. Central States claims that this is the first action under the July 1, 1998 revised Demand although in the second case the arbitrator directed Central States to issue the July 1, 1998 revised demand. Hunt moves for summary judgment on Central States third complaint arguing that it involves the precise claims fully litigated before Judge Shadur and it is barred by *res judicata.* In the alternative, Hunt seeks summary judgment

6

on grounds of laches because Central States has deprived Hunt of its statutory right to arbitrate due to Central States lack of diligence in bringing a revised Demand. Finally, Hunt claims that it has suffered severe prejudice and a denial of due process under the Constitution as a result of such. Central States moves for summary judgment arguing that *res judicata* does not apply because the Seventh Circuit explicitly stated that a subsequent action would not be precluded and because Hunt's failure to make payments under the revised demand constitutes a new wrong for which relief is available. Central States further argues that the basis for the prior decisions was the original demand's prematurity not the merits of Hunt's secondary liability once Wintz defaulted on its payments on July 27, 1999.

Summary judgment is in order "when no genuine issue of material fact exists and when the moving party is entitled to judgment as a matter of law. *Central States v. Bell Transit Co.*, 22 F. 3d 706, 710 (7th Cir. 1994). On each side's current motion this Court "is not required to draw every conceivable inference from the record—only those inferences that are reasonable"–in the light most favorable to the nonmovant. *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F. 2d 232, 236 (7th Cir. 1991) and cases cited there). Because both Hunt and Central States have moved for summary judgment, it is necessary to adopt a dual perspective that sometime involves the denial of both motions. But because the material facts here are not in dispute, no such hazard is posed.

## DISCUSSION

Hunt's argument that *res judicata* bars Central States third complaint is insufficient as a matter of law. The *res judicata* questions in this case is controlled by federal law because the

7

prior judgments were rendered in federal court on a federal law claim. *See Hudson v. Hedge,* 27 F. 3d 274, 276 (7th Cir. 1994); *Conner v. Reinhard,* 847 F. 2d 384, 394 (7th Cir. 1988). The three requirements for *res judicata* under federal law are: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits. *In the Matter of Energy Coop, Inc.,* 814 F. 2d 1226, 1230 (7th Cir. 1987). There is no dispute that element one–the parties are identical has been met. Rather, the dispute centers around whether the remaining two elements have been satisfied.

As to the identity of the causes of action we find that they are not identical. The record reveals that both the action in front of Judge Nordberg and the action in front of Judge Shadur concerned the propriety of Central States original demand and the effect of premature notice to Hunt together with the Arbitrator's decision to permit Central States to revise the date of the demand notice. It is undisputed that the subject of the arbitration was the May 31, 1996 demand only. (Page 8 of the Arbitration Opinion). It did not concern collection under the revised demand should Hunt choose to disregard payment pursuant to the revised demand. The thrust of the prior decisions in the district court and the Seventh Circuit was that Central States' original demand for withdrawal liability was premature and whether the appropriate method to cure this defect could in fact be a revised demand rather than rescission.

The procedural ramifications of Central States premature notice is separate and distinct from the substantive merits of the final withdrawal liability assessment. To be sure, Central States in its motion to alter or amend judgment attempted to convert the Arbitrator's decision into a final award as to final withdrawal liability assessment but Judge Shadur ruled the attempt too late and prohibited Central States from expanding the breadth of the proceedings in such a

8

manner. Judge Shadur noted that there was no modification sought by either side prior to his judgment which is, of course, what the ERISA statute would have permitted. Hunt's argument that Judge Shadur's decision confirming the arbitrator's direction to issue a revised demand precludes this action is not supported by a reading of Judge Shadur's decision. Rather, it was implicitly assumed by the arbitrator and Judge Shadur, and explicitly stated by the Seventh Circuit, that Hunt would comply with the revised demand. Indeed the arbitrator "directed the Parties to begin anew the demand, request for review, and arbitration processes. If Hunt wanted to challenge the arbitrator's decision directing the parties to begin the process anew, Hunt could have challenged that decision on appeal. Hunt did not do so. In light of the above it also cannot be concluded that there is a final judgment (element three of the res judicata test) on the merits of the withdrawal liability assessment issue. Moreover, numerous Seventh Circuit cases have held that *res judicata* does not bar a claim based upon a new wrong even if the new wrong is related to a prior wrong previously litigated. *See, e.g. Perkins v. Board of Trustees of University of Illinois,* 116 F. 3d 235, 236-37(7th Cir. 1997); *Supporters To Oppose Pollution, Inc. v. Heritage Group,* 973 F. 2d 1320, 1326 (7th Cir. 1992); *Spiegel v. Continental Illinois Nat'l Bank,* 790 F. 2d 638, 646 (7th Cir. 1986). It can be concluded that Hunt's failure to make payments under the revised demand is a new wrong separate and distinct from the alleged wrong of failure to pay the original demand. This is true notwithstanding the fact that "essentially the same course of wrongful conduct" is involved. While this Court is aware of the *res judicata* rule set forth in *James v. Gerber Products, Co.,* 587 F. 2d 324, 327-28 (7th Cir. 1998) we believe it is not applicable given the procedural history of this case.

Furthermore, the language of the Seventh Circuit can only be concluded to be part of the

holding of the Court in that this language clearly explained the Court's rationale in reaching its decision to affirm Judge Shadur. If the last paragraph of the Seventh Circuit's opinion was deleted it would in fact impair the analytical holding because the third and fourth sentences affirm the fact that both Judges dealt with the procedural consequence of the premature demand. The Seventh Circuit clearly stated that its decision did not preclude future recovery because it was undisputed that the Fund had issued a renewed demand.

Finally, we find Hunt's procedural due process argument unpersuasive. Hunt has not been precluded from arbitration in this case. The arbitrator explicitly stated that Hunt should request review and initiate arbitration with respect to the revised demand should it wish to challenge the revised demand.

## CONCLUSION

For the reasons set forth above Central States motion for summary judgment is granted as to unpaid withdrawal liability in the amount of $303,592.75 with interest at the prime rate per annum and an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% and attorneys fees and costs. (#8-1) Central States is directed to file a motion for total judgment for a sum certain within ten days of the date of this order. Hunt's motion for summary judgment is denied (#31-1).

SO ORDERED

ENTERED: 3/22/07

HON. RONALD A. GUZMAN
United States Judge